IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS YERANSIAN, <br><br> Plaintiff, <br><br> v. <br><br> MARKEL CORPORATION, <br><br> Defendant. | C.A. No. 16-808-GBW <br> (Consolidated) |

## MEMORANDUM ORDER[1]

Pending before this Court are Defendant Markel Corporation's ("Defendant" or "Markel") Motion to Dismiss or for Summary Judgment (D.I. 151) and Plaintiff Thomas Yeransian's ("Plaintiff" or "Yeransian") Motion for Leave to File an Amended Complaint (D.I. 157). The Court has reviewed the relevant briefing and accompanying exhibits and declarations. D.I. 151; D.I. 152; D.I. 153; D.I. 154; D.I. 155; D.I. 165; D.I. 166; D.I. 167; D.I. 168; D.I. 169; D.I. 170 (Markel's Motion to Dismiss or for Summary Judgment briefing); D.I. 157; D.I. 159; D.I. 160 (Yeransian's Motion for Leave to File an Amended Complaint briefing). For the reasons stated below, the Court GRANTS Markel's Motion to Dismiss or for Summary Judgment (D.I. 151) and DENIES Yeransian's Motion for Leave to File an Amended Complaint (D.I. 157).

---

[1] The Court writes for the benefit of the parties and assumes their familiarity with this action. On November 22, 2021, the Court consolidated C.A. Nos. 16-808, 18-1777, and 20-762. D.I. 173. All D.I. citations refer to C.A. No. 16-808-GBW unless otherwise noted.

1

I.     **LEGAL STANDARD**

    A.     **Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (citations omitted). "The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case." *Peloton Interactive, Inc. v. iFIT Inc.*, C.A. No. 20-1535-RGA, 2022 WL 1523112, at *1 (D. Del. May 13, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party

fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020). The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)

(cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## II. DISCUSSION

### A. Markel's Motion to Dismiss or For Summary Judgment

#### 1. Breach of Contract Counts

In its Complaints, Yeransian alleges that Markel breached the Contingent Value Rights Agreement ("CVR Agreement"). D.I. 54 ¶¶ 35-51; C.A. No. 18-1777, D.I. 1 ¶¶ 52-54; C.A. No. 20-762, D.I. 20 ¶¶ 117-29. "Under Delaware law, a breach of contract claim requires Plaintiff[] to demonstrate (1) a contractual obligation, (2) a breach of that obligation by Defendant, and (3) resulting damage." *M.M. by Thomas v. Red Clay Consol. Sch. Dist.*, C.A. No. 18-423-MN, 2019 WL 2117646, at *4 (D. Del. May 15, 2019) (citing *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). Markel argues that there are no genuine issues of material fact as to any of these three elements and, accordingly, it is entitled to judgment as a matter of law. The Court agrees.

Yeransian admits nearly every fact that Markel included in its Concise Statement of Facts, and the three paragraphs where Yeransian declined to admit do not bar this Court from granting summary judgment. D.I. 166. "A fact is material when its resolution 'might affect the outcome of the suit under the governing law[.]'" *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004), *as amended* (Aug. 12, 2004) (quoting *Anderson*, 477 U.S. at 248). "'As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

4

Factual disputes that are irrelevant or unnecessary will not be counted.'" *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

> First, Yeransian declined to admit the following paragraph:
>
>> Ultimately, Markel and Aspen agreed to a merger in which Markel would purchase Aspen by paying over $100 million in cash at closing with the potential for additional consideration to be paid in the future under the CVR Agreement.
>
> D.I. 166 ¶ 4. Yeransian responded with the following:
>
>> Markel first offered $183 million to purchase Aspen Holdings based on the book value of Aspen Holdings. [Yeransian Dec.1 ¶ 5.] Subsequent to its original offer Markel took issue with Aspen Holding's reserves and, in a compromise, Markel agreed to pay $135 million at time of closing. [Yeransian Dec. ¶ 6.] As part of the compromise Markel held the remainder of the purchase price, $47.3 million, to be paid at the end of five or eight years subject to certain adjustments. [Yeransian Dec. ¶¶ 6, 8-9; D.I. 36-2 Definitions "Payment Date."]

*Id.* (removing italics). The Court agrees with Markel that Yeransian's response contains more detail about the 2010 Merger Agreement between Markel and Aspen Holdings, but does not dispute Markel's description of the agreement. D.I. 169 at 2. Thus, there is no genuine dispute as to that material fact.

> Second, Yeransian declined to admit the following two paragraphs:
>
>> Markel used that value to calculate the final payment amount due to the Holders and submitted that calculation in a certificate to the Rights Agent on September 20, 2021
>
>> . . .
>
>> Markel wired the final payment amount to the Rights Agent the same day.
>
> D.I. 166 ¶¶ 18-19. Yeransian responded to these paragraphs as follows:
>
>> Admitted that Markel added some interest to the Adjusted Principal Amount and paid that amount to the Rights Agent for further distribution. Yeransian believes the Final Amount must include default interest from the date of Markel's first default in its duties under the CVR Agreement. [Yeransian Dec. ¶ 21.]
>
>> . . .

5

> Admitted that Markel wired the amount it claims is the Final Amount to the Rights Agent. Yeransian disputes that the Final Amount is complete. [Yeransian Dec. ¶ 21.]

*Id.* (removing italics). The crux of the parties' dispute centers on the CVR Agreements' definition of "Payment Amount," "Final Amount," and interest calculations. "Under Delaware law, contract interpretation is a question of law, and the role of the court is to effectuate the parties' intent." *Cato Capital LLW v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 618 (3d Cir. 2014) (internal citations omitted). Where the contract is clear and unambiguous, the words of the contract are given their "ordinary and usual meaning." *Id.* at 618 (citation omitted). "To be 'unambiguous' a contract clause must be reasonably capable of only one construction." *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (citing *American Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 580-81 (3d Cir. 1995)).

The terms of the CVR Agreement are clear and unambiguous. "Yeransian believes the Final Amount must include default interest from the date of Markel's first default in its duties under the CVR Agreement." D.I. 166 ¶ 18. However, Yeransian's interpretation of the CVR Agreement is contrary to the plain language of the defined terms. Section 3.1(b) of the CVR Agreement defines the "Final Amount" to be the "Adjusted Principal Amount" "together with interest accrued thereon at the Interest Rate from the Closing Date to the Payment Date[.]" D.I. 36-2 at 9. Thus, the Final Amount includes the "Interest Rate," not the "Default Interest Rate," as Yeransian contends. Moreover, Section 1.1(b) of the CVR Agreement provides separate definitions for "Interest Rate" and "Default Interest Rate." D.I. 36-2 at 3, 5-6. The CVR Agreement defines "Payment Amount" as "the Final Amount less the FBR Fee." D.I. 36-2 at 12. Thus, Markel properly calculated and paid the Payment Amount, consistent with the plain language of the CVR Agreement. D.I. 154, Exs. B & C; D.I 155. For these reasons, the Court

finds that Yeransian has failed to establish a genuine dispute as to any material fact with respect to its claim for a breach of contract and, thus, will grant summary judgment in favor of Markel.

The Court disagrees with Yeransian that "it is law of the case that there are breach of contract issues that remain to be litigated." D.I. 165 at 2. Yeransian relies on the Court's Memorandum granting Markel's Motion to Stay Litigation and Compel Arbitration (D.I. 64) to argue that the "§ 3.2(d) calculation constitutes only a 'limited' or 'narrow' arbitration clause which, as recognized by this Court, does not encompass all disputes between the parties." D.I. 165 at 2 (quoting D.I. 64 at 17). The Court disagrees.

The Court finds that Yeransian has misconstrued this Court's Memorandum (D.I. 64). The Court did not affirmatively state in its Memorandum that there are factual disputes that would exist after the completion of the arbitration. *See generally* D.I. 64. The Court's Memorandum also did not affirmatively state that it will have to "determine whether Markel's version of the Adjusted Principal Amount was calculated according to the terms of the CVR Agreement and whether Markel intentionally undervalued the CVRs, among other things," as Yeransian contends.[2] D.I. 165 at 9. Rather, the Memorandum held that it will be "up to the independent experts" to determine whether Markel's calculations are consistent with the methodology set forth in the CVR Agreement. D.I. 64 at 19. The Court agrees with Markel that, because the independent experts, during the arbitration, "reviewed Markel's adjustment statements and supporting calculations when independently calculating the CVRs' value, their final determination eliminates the need for any further inquiry into Markel's calculations." D.I. 169 at 3-4. Also, the "arbitration and Markel's payment based on [the independent experts'] award fully resolves all issues between the

---

[2] In fact, Markel's intent or motive for allegedly undervaluing the CVRs are immaterial to Yeransian's breach of contract claim as none of the elements Yeransian must prove include an intent or motive element. *See Red Clay*, 2019 WL 2117646, at *4.

7

parties related to the CVRs' value, Markel's calculations, and Markel's annual reporting on them." *Id.*

The Court also agrees with Markel that the Section 3.2(d) arbitration proceeding collaterally estops Yeransian from pursuing its "valuation-focused" breach of contract claims. D.I. 153 at 7. "'A claim will be collaterally estopped only if the same [factual] issue was presented in both cases, the issue was litigated and decided in the first suit, and the determination was essential to the prior judgment.'" *Rogers v. Morgan*, 208 A.3d 342, 346 (Del. 2019) (citation omitted). Arbitration decisions are prior actions for collateral estoppel purposes. *SC & A Constr., Inc. v. Potter*, C.A. No. 12-9-22, 2017 WL 2378020, at *7 (Del. Super. Ct. May 31, 2017). The Section 3.2(d) arbitration proceeding in the CVR Agreement resolved all of Yeransian's valuation-focused breach of contract claims. The purpose of this arbitration proceeding was to calculate the appropriate CVR value. "Likewise, by creating their own process for calculating the value, the Experts considered and resolved the allegations about Markel's process for issuing the annual adjustment statements showing the value." D.I. 153 at 8. These determinations were essential for the expert to determine the appropriate CVR value. Furthermore, the CVR Agreement states that the experts' determination will be "final and binding on the parties." D.I. 36-2 at 11.

For the reasons stated above, the Court agrees with Markel that "Yeransian is collaterally estopped in all three cases from re-litigating whether Markel accurately calculated the CVRs' value or used the correct process in doing so annually." D.I. 153 at 8.

Yeransian's remaining breach of contract claims relating to defaults under Section 9.3(b) of the CVR Agreement are also baseless. Section 9.3(b) states:

> "Event of Default" means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body): (b)

> default in the performance or breach of any covenant or warranty of Parent ( other than a covenant or warranty for which the consequences of breach or nonperformance are addressed elsewhere in this Section 9.3), and continuance of such default or breach for a period of 60 days after there has been given, by registered or certified mail, to Parent by the Holder Representative upon the direction of the Required Holders a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder.

D.I. 36-2 at 23. Yeransian appears to be arguing that any violation of any term in the CVR Agreement is an Event of Default under Section 9.3. D.I. 165 at 8 ("Markel's assertion is contrary to the plain language of § 9.3(b) which identifies an Event of Default as a breach by Markel of any of the covenants and warranties not dealt with in §§ 9.3 and 9.4. [D.I. 36-2.] In addition, the Agreement's Recitals make each of the CVR Agreement's terms a covenant of Markel, stating that the parties 'covenanted and agreed' on all the terms set forth in the Agreement. [D.I. 36-2.]").

As stated above, contract interpretation is a question of law for the court. *Cato*, 70 F. Supp. 3d at 618. If the Court were to adopt Yeransian's interpretation of Section 9.3(b), it would render several provisions of the CVR agreement meaningless, which conflicts with the rules of contract interpretation. *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 837 (3d Cir. 2003) ("Courts must strive to give effect to all provisions of a contract and not render any provision meaningless.") (citing *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998)). As correctly noted by Markel:

> Yeransian's interpretation would render Section 9.3 meaningless along with Article VI, which explicitly lists the "Covenants of Parent" (Markel). In other words, if every violation of any term was an Event of Default under Section 9.3(b), then there would be no need for a separate section listing the Events of Default (9.3) or an entire article listing Markel's covenants (Article VI).

D.I. 169 at 5.

Finally, the Court disagrees with Yeransian that it is entitled to discovery to respond to Markel's Motion for Summary Judgment. D.I. 165 at 10. Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). Rule 56(d) requires "'a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *LaBarre v. Bristol-Myers Squibb Co.*, 544 F. App'x 120, 124 (3d Cir. 2013) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 1394 (3d Cir. 1988)). Yeransian's Declaration fails to make the required showing for discovery under Rule 56(d). *See generally* D.I. 168. Yeransian wrote:

> 38. I believe that in discovery we will obtain information showing that Markel's undervaluation of the CVRs, both before and after its 2017 "recalculations," was intentional and not the result of inadvertent miscalculation.
>
> 39. Regardless, the fact that Markel failed to provide the required "supporting documentation which demonstrates in reasonable detail how such amounts were determined by" is a default under the CVR Agreement that requires Markel to pay the CVR Holders $47.3 plus default interest. No discovery is required to make this finding.

*Id.* ¶¶ 38-39. The discovery Yeransian seeks in paragraph 38 of its declaration is immaterial to its breach of contract claims as intent is not one of the three elements to prove a breach of contract claim. *Red Clay*, 2019 WL2117646, at *4. In fact, as pointed out by Markel, paragraph 39 of Yeransian's Declaration "admits that 'no discovery is required' to make the finding that he ultimately seeks—an interpretation that Markel's alleged violations of Section 3.2(a) are Events of Default warranting a windfall recovery far beyond the CVRs' value as the Experts determined."

10

D.I. 169 at 7 (citing D.I. 168 ¶ 39). Accordingly, Yeransian has failed to show that it is entitled to discovery under Rule 56(d).

For these reasons, the Court finds that Yeransian has failed to establish a genuine dispute as to any material fact with respect to its claim for a breach of contract in all three cases (No. 16-808; No. 18-1777; No. 20-762). Thus, Markel is entitled to judgment as a matter of law and summary judgment is entered in favor of Markel on Count One of the Complaint for all three cases.

### 2. Declaratory Judgment Counts[3]

Markel argues that the Section 3.2(b) arbitration proceeding mooted all of Yeransian's declaratory judgment relief. *See, e.g.*, D.I. 54 ¶¶ 52-56, 76-83; No. 20-762, D.I. 20 ¶¶ 149-55. This Court agrees.

Count Two in C.A. No. 16-808 relates to Yeransian's request for a declaratory judgment that Markel has "failed to reserve at the 50% confidence level as required by the CVR and a declaratory judgment that under sound actuarial principles and GAAP, premium audit must be included in the value of the CVRs." D.I. 54 ¶ 55. Count Seven in C.A. No. 16-808 requests a declaratory judgment relating to whether Markel stated the correct value in the Five-Year Adjustment Statement. *Id.* ¶¶ 76-83. Count Five in C.A. No. 20-762 requests a declaratory judgment regarding several contract terms in the CVR Agreement, and more specifically, related to calculating the Final Amount. D.I. 20 ¶¶ 149-55.

"A case is moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 208 (3d Cir.

---

[3] The Court notes that, other than the breach of contract claims, Yeransian has failed to oppose any of the non-contract claims in Markel's Motion to Dismiss or for Summary Judgment. *See generally* D.I. 165.

11

2016) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted)). Here, the experts' determination of the CVR's value as a result of the Section 3.2(d) arbitration proceeding and Markel's payment of the "Payment Amount" has "fully resolved all disputes over the CVR's value," including Counts Two and Seven in C.A. No. 16-808 and Count Five in C.A. No. 20-762. D.I. 153 at 18. Thus, these issues are no longer live and will be dismissed as moot.

### 3. Accounting Counts

The Court agrees with Markel that the Counts related to accounting, i.e., Count Five in C.A. No. 16-808 and Count Three in C.A. No. 20-762, should be dismissed with prejudice. D.I. 153 at 19-20. "'An accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to either as a result.'" *Garza v. Citigroup Inc.*, 192 F. Supp. 3d 508, 511 (D. Del. 2016), *aff'd*, 724 F. App'x 95 (3d Cir. 2018), and *aff'd*, 724 F. App'x 95 (3d Cir. 2018) (citation omitted). The Third Circuit has held that, "[a] prayer for an accounting will not, in itself, render a complaint cognizable in equity . . . [t]here must be some equitable ground for relief in addition to the mere demand for an account." *Kirschner v. West Co.*, 300 F.2d 133, 135-56 (3d Cir. 1962) (internal citations omitted). Because there is a contractual relationship between the parties through the CVR Agreement, an adequate legal remedy is present, which precludes Yeransian's separate Counts for accounting. *See Kirschner*, 300 F.2d at 136. Thus, Count Five in C.A. No. 16-808 and Count Three in C.A. No. 20-762 are dismissed with prejudice.

### 4. Breach of Fiduciary Duty Counts

The Court agrees with Markel that the Counts related to Markel's alleged breach of fiduciary duties, i.e., Count Eight in C.A. No. 16-808, Count Two in C.A. No. 18-1777, and Count Four in

C.A. No. 20-762, should be dismissed. D.I. 54 ¶¶ 86-87; No. 18-1777, D.I. 1 ¶ 56; No. 20-762, D.I. 20 ¶ 146.

"In determining whether a breach of fiduciary duty claim is duplicative of a corresponding breach of contract claim, the principal inquiry by Delaware courts is whether the fiduciary duty in the complaint arises from general fiduciary principles or from specific contractual obligations agreed upon by the parties." *Grunstein v. Silva*, C.A. No. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009). Yeransian's Counts relate to Markel's alleged mismanagement of the "Payment Amount" under the CVR Agreement. *See* D.I. 54 ¶¶ 86-87; No. 18-1777, D.I. 1 ¶ 56; No. 20-762, D.I. 20 ¶ 146. Markel's duties and obligations for the Payment Amount are laid out in the CVR Agreement. *See, e.g.*, D.I. 36-2 at 10-11. "'[I]f the duty sought to be enforced arises from the parties' contractual relationship, a contractual claim will preclude a fiduciary claim.'" *Grunstein*, 2009 WL 4698541, at *6 (citation omitted). Thus, the Court must evaluate "the parties' conduct within the framework they themselves crafted[, i.e., the CVR Agreement], instead of imposing more broadly defined equitable duties." *Id.*

Accordingly, Count Eight in C.A. No. 16-808, Count Two in C.A. No. 18-1777, and Count Four in C.A. No. 20-762 are dismissed with prejudice.

### 5. Negligent Misrepresentation Count

Yeransian's Fourth Count in C.A. No. 16-808 for negligent misrepresentation is barred by the economic loss doctrine. D.I. 54 ¶¶ 61-66. "The economic loss doctrine is a judicially created doctrine that allows a party to recover in tort only if losses are accompanied by bodily harm or property damage; in other words, the doctrine prevents plaintiffs from recovering in tort for losses suffered that are solely economic in nature." *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 526 (D. Del. 2012) (citing *Del. Art Museum v. Ann Beha Architects,*

*Inc.*, C.A. No. 6-481-GMS, 2007 WL 2601472, at *2 (D. Del. Sept. 11, 2007)). "The economic loss rule is a court-adopted measure that prohibits certain claims in tort where overlapping claims based in contract adequately address the injury alleged." *Brasby v. Morris*, C.A. No. C.A. 5-10-22, 2007 WL 949485, at *6 (Del. Super. Ct. Mar. 29, 2007). "'Under the economic loss doctrine, a claim of negligent misrepresentation is only appropriate where the complaint alleges noneconomic losses such as personal injury or damage to property that is not the subject of the underlying claim.'" *Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 710 (D. Del. 2010) (citation omitted). No such noneconomic losses are alleged in the Complaint. *See* D.I. 54 ¶¶ 61-66. Thus, the Court grants Markel's motion to dismiss Count Four in C.A. No. 16-808.

### 6. Fraud Counts

The Court also agrees with Markel that the economic loss doctrine and Federal Rule of Civil Procedure 9(b) bar Yeransian's fraudulent misrepresentation counts. *See* D.I. 54 ¶¶ 57-60; C.A. No. 20-762, D.I. 20 ¶¶ 130-38.

"[O]ne cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Iotex Commc'ns, Inc. v. Defries*, C.A. No. 15-817, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998). That is exactly what Yeransian has done here. Tellingly, for this Count, Yeransian incorporates by reference a section titled "FACTS SHOWING FRAUD AND BREACH OF CONTRACT" in its Complaint. D.I. 54 ¶¶ 58, 11-26.

"[W]hen, as here, a complaint alleges fraud contemporaneously with breach of contract, the fraud claim will survive only if premised 'on conduct that is separate and distinct from the conduct constituting breach.'" *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, C.A. No. 15-2-161-WCC, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016) (quoting *ITW Glob. Invs. Inc. v.*

14

*Am. Indus. P'rs Capital Fund IV, L.P.*, C.A. No. 14-10-236, 2015 WL 3970908, at *6 (Del. Super. June 24, 2015)). Here, the Fraud Counts in the Complaints are not premised on conduct that is separate and distinct from the conduct constituting breach. *See* D.I. 54; C.A. No. 20-762, D.I. 20. In fact, the Court finds that the breach of contract claims and the fraud claims are based on the same operative facts. The Court agrees with Markel that "Yeransian's allegations about Markel's post-merger conduct show 'exactly the type of bootstrapping this Court will not entertain' because they involve couching Markel's alleged breaches as 'failure[s] to disclose an intention to take certain actions arguably inconsistent with that agreement.'" D.I. 153 at 16 (quoting *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, C.A. No. 20456, 2004 WL 1739522, at *8 (Del. Ch. Aug. 3, 2004)).

Yeransian's fraud claims fair no better under the heightened pleadings requirements of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016). "'Delaware courts have consistently held that to successfully plead a fraud claim, the allegedly defrauded plaintiff must have sustained damages as a result of a defendant's action.' 'And those fraud damages allegations can't simply 'rehash' the damages that were allegedly caused by the claimed breach of contract.'" *Firmenich Inc. v. Nat. Flavors, Inc.*, C.A. No. 19-1-320, 2020 WL 1816191, at *5 (Del. Super. Ct. Apr. 7, 2020) (citations omitted). The Court agrees with Markel that "Yeransian alleges no distinct damages and simply reprises the damages under

15

his breach of contract claim." D.I. 153 at 17. Thus, because "the Court finds that damages are duplicative, the Court should dismiss the fraud claim." *Firmenich*, 2020 WL 1816191, at *5.[45]

### B. Yeransian's Motion for Leave to File a Consolidated Amended Complaint

The Court denies Yeransian's Motion for Leave to File a Consolidated Amended Complaint (D.I. 157). Yeransian argues that the purpose of its motion is two-fold: (1) the Consolidated Amended Complaint "clarif[ies] the plaintiff's allegations as they exist following the stipulated consolidation of the remaining outstanding cases"; and (2) the Consolidated Amended Complaint "clarify[ies] and narrow[s] the allegations which have previously been asserted against Markel." D.I. 157 at 1-2. However, the Court finds the Consolidated Amended Complaint is futile.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." However, "undue delay, bad faith, dilatory motive, prejudice, [or] futility" could all "justify a denial of leave to amend." *Shane v. Fauver*, 213 F.3d 113, 115

---

[4] Yeransian requests punitive damages under Count Six for "Markel's fraudulent actions, and actions in failing to follow the CVR Agreement[.]" D.I. 54 ¶ 73. But, because none of Yeransian's fraud claims are cognizable, as discussed above, the Court will also dismiss Yeransian's claims for punitive damages. Furthermore, it appears that Yeransian argues that punitive damages are warranted for its breach of contract claims. *See id.* ¶ 74. If that is the case, punitive damages are also not available. "In Delaware, 'punitive damages are not recoverable for breach of contract unless the conduct also amounts independently to a tort.'" *Richard A. Schuetze, Inc. v. Utilligent, LLC*, C.A. No. 21-476-SB, 2022 WL 958359, at *3 (D. Del. Mar. 30, 2022) (quoting *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 445 (Del. 1996)). Nothing in Yeransian's Complaint fits that bill. Thus, the Court agrees with Markel that the punitive damages count "cannot stand." D.I. 153 at 20.

[5] Yeransian also argues that "[s]ections of the CVR Agreement anticipate disputes being decided in a Court of law." D.I. 165 at 19-20 (citing §§ 8.6(b), 11.6(b)). According to Yeransian, neither of these sections would be "necessary or relevant if any and all disputes were subject to the Independent Experts' valuation of the CVRs" under Section 3.2(d) of the CVR Agreement. D.I. 165 at 20. The Court disagrees. The CVR Agreement included the attorneys' fees provision in Section 8.6(b) and forum selection clause in Section 11.6(b) because the parties "realized that court action could be necessary to resolve *certain* disputes." D.I. 169 at 7 (emphasis added). But the parties also created a carve-out in the CVR Agreement to resolve disputes about the CVR's value. *See* D.I. 36-2 at 10-11. Nothing in the CVR Agreement suggests that "all were subject to the Independent Experts' valuation of the CVRs," as Yeransian contends. D.I. 165 at 20.

16

(3d Cir. 2000). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted under the standard of Federal Rule of Civil Procedure 12(b)(6)." *Lejon-Twin El v. Marino*, 722 F. App'x 262, 265 (3d Cir. 2018) (quoting *Shane*, 213 F.3d at 115) (internal quotations marks omitted).

The Consolidated Amended Complaint alleges three counts: Count One—Breach of Contract; Count Two—Fraudulent Misrepresentation and Omission; and Count Three—Declaratory Action. D.I. 157-1. The Court has already addressed above why Yeransian's fraud and declaratory action claims fail to state a claim under Rule 12(b)(6). *See supra* Section II.A. The Court has also addressed why Yeransian cannot pursue its breach of contract claims. *Id.* None of Yeransian's proposed amendments change the Court's analysis. Thus, the Court denies Yeransian's Motion for Leave to File a Consolidated Amended Complaint (D.I. 157) because it is futile.

## III. CONCLUSION

For the reasons stated above, the Court grants Markel's motion to dismiss for failure to state a claim or for summary judgment and denies Yeransian's motion for leave to file a consolidated Amended Complaint.

\* \* \*

NOW THEREFORE, IT IS **HEREBY ORDERED** on June 8, 2023 that:

1. Markel's Motion to Dismiss for Failure to State a Claim or For Summary Judgment (D.I. 151) is **GRANTED**;

2. All pending claims in C.A. Nos. 16-808, 18-1777, and 20-762 are now resolved by Markel's Motion to Dismiss for Failure to State a Claim or For Summary Judgment (D.I. 151) as follows:

    a. Summary judgment is granted in favor of Markel and against Yeransian as to Count One in all three cases for breach of contract;

    b. Count Eight in C.A. No. 16-808, Count Two in C.A. No. 18-1777, and Count Four in C.A. No. 20-762 for breach of fiduciary duty are dismissed with prejudice;

    c. Count Two in C.A. No. 16-808 for declaratory judgment as to improper reserves is dismissed with prejudice;

    d. Count Three in C.A. No. 16-808 and Count Two in C.A. No. 20-762 for fraudulent misrepresentation and omission are dismissed with prejudice;

    e. Count Four in C.A. No. 16-808 for negligent misrepresentation is dismissed with prejudice;

    f. Count Five in C.A. No. 16-808 and Count Three in C.A. No. 20-762 seeking an accounting are dismissed with prejudice;

    g. Count Six in C.A. No. 16-808 for punitive and exemplary damages is dismissed with prejudice;

    h. Count Seven in C.A. No. 16-808 for declaratory judgment as to the 2016 Settlement Agreement is dismissed without prejudice; and

    i. Count Five in C.A. No. 20-762 for declaratory judgment is dismissed with prejudice.

3. Because Markel's Motion has disposed of all counts in all three actions, judgment shall be entered in favor of Markel and against Yeransian.

4. Yeransian's Motion for Leave to File an Amended Complaint (D.I. 157) is **DENIED**.

5. The parties shall meet and confer and, no later than 5:00 p.m. on Friday, June 16, 2023, file a joint letter no longer than two (2) pages notifying the Court whether, in light of the Court's Order granting Markel's motion to dismiss or

for summary judgment and denying Yeransian's motion for leave to file an amended complaint, Yeransian's Motion to Confirm Arbitration Award (D.I. 175) is moot.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE